IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Nautilus Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 14 CV 50083 |
| | ) | |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| Front Range Environmental, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

It is this Court's Report and Recommendation that the Plaintiff's Motion for Entry of Default Judgment [Dkt. # 16] be granted. The parties shall file any objections to this report and recommendation by August 25, 2014. The status hearing and presentment of the motion set for 8/7/2014 at 10:00 AM is stricken and no appearances are necessary.

## STATEMENT

FACTS

On April 21, 2013, Nautilus Insurance Company ("Plaintiff") filed its Complaint for Declaratory Judgment against Front Range Environmental, LLC ("Defendant"). Dkt. # 1. The Defendant is also a party in an underlying state court case pending in Jefferson County, Colorado District Court, *Wal-Mart Stores, Inc. v. Front Range Environmental et al.*, Case No. 2013 CV 32289 ("Wal-Mart Lawsuit"). Dkt. # 7, ¶ 10-13. In the Wal-Mart Lawsuit, Wal-Mart Stores, Inc. seeks reimbursement for a settlement it paid to Holly Averyt, who was allegedly injured when she slipped and fell on ice and grease at a Colorado Wal-Mart store. Dkt. #1, Ex. B, ¶¶ 17-21. The Plaintiff here, Nautilus Insurance Company, is not a party to the Wal-Mart Lawsuit.

The Plaintiff issued Environmental Combined Policy No. ECPC1516377-10 ("Primary Policy") and Excess Liability Insurance Policy No. FFX1516375-10 ("Excess Policy") to the Defendant (collectively the "Policies"). Dkt. # 7, ¶¶ 8-9. The Policies were effective from May 1, 2010 to May 1, 2011 ("Policy Period").[1] Dkt. #15, Amended Ex. G., Policy Declarations Page; Dkt. #15, Amended Ex. H., Policy Declarations Page. The Plaintiff seeks a declaratory judgment relieving it of any duty to defend or indemnify the Defendant in connection with the Wal-Mart Lawsuit under the terms of the Policies.

The Plaintiff filed an Amended Complaint[2] on April 28, 2014. Dkt. # 7. On May 27,

---

[1] The Defendant added "Professional Liability" coverage to the Primary Policy effective February 7, 2011. Dkt. #15, Amended Ex. G., Policy Changes.
[2] The Plaintiff filed its Amended Complaint to include amended jurisdictional allegations alleging the name and citizenship of each member of Defendant LLC as directed by the District Court on April 23, 2014. Dkt. ## 6, 7 ¶ 5.

1

2014, summons was issued for the Defendant. Dkt. # 8. The Plaintiff executed service on the Defendant on May 27, 2014, and the Defendant's responsive pleading was due by June 17, 2014. Dkt. # 10. The Defendant did not file an appearance or an answer in this matter.

On July 11, 2014, the Clerk entered a default order against the Defendant pursuant to Federal Rule of Civil Procedure 55(a). Dkt. # 14. On July 23, 2014, Plaintiff moved for entry default judgment against the Defendant pursuant to Federal Rule Civil Procedure 55(b)(2). Dkt. # 16.

LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default judgment. *See Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Obtaining a default judgment is a two-step process, as "Rule 55 of the Federal Rules of Civil procedure draws a distinction between an entry of a default, Rule 55(a), and the entry of judgment by default, Rule 55(b)." *Thacker v. Menard, Inc.*, 86 F.3d 1158 (Table), 1996 WL 267456, at *1 (7th Cir. 1996). Under Rule 55(a), the clerk must enter a party's default when that party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The entry of a default by the clerk is a formal matter, and not a final judgment. *See U.S. v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) ("But an order of default is not a final judgment, though a default judgment is. . . . The default order was an intermediate, ministerial . . . docket entry.").

To complete the default judgment process, the default judgment must be entered pursuant to Rule 55(b). Fed. R. Civ. P. 55(b). Under Rule 55(b)(1), the clerk may enter judgment if "the plaintiff's claim is for a sum certain . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A default judgment "established, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). The decision to enter default judgment lies within the discretion of the district court. *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

ANALYSIS

On July 11, 2014, the Clerk entered default against the Defendant. Dkt. # 14. Now, the Plaintiff moves this Court to complete the default judgment process and enter default judgment against the defaulted Defendant. Dkt. # 16. Here, however, Plaintiff's complaint does not seek to recover monetary damages, but rather a declaratory judgment. Nonetheless, "[i]t is well-settled that the court has authority to enter declaratory default judgments as well as default judgments for monetary damages." *Tygris Asset Finance, Inc. v. Szollas*, No. 09 C 4488, 2010 WL 2266432, at *6 (N.D. Ill. June 7, 2010); *see also Owners Ins. Co. v. Complete Mech. Servs., Inc.*, No. 08 C 4201, 2008 WL 4821654, at *1-2 (N.D. Ill. Oct. 31, 2008). It has also been established that "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

The Plaintiff is entitled to the declaratory default judgment it seeks in this case. The Policies issued by Plaintiff bar coverage for incidents occurring outside of the policy period and contain exclusions for expected injury and known conditions, which are quoted at length in

Plaintiff's Amended Complaint for Declaratory Judgment. Dkt. # 7, ¶¶ 24-39. For the reasons set forth in paragraph 41 of the Plaintiff's Amended Complaint for Declaratory Judgment, the allegations contained within the underlying Wal-Mart Lawsuit fall within the scope of the exclusions of the Policies, and therefore the Policies do not provide coverage for those claims. Dkt. # 7, ¶¶ 41 (A-P).

Specifically, the Primary Policy provides coverage for (A) bodily injury and property damage liability, (B) personal and advertising injury liability, (C) medical payments, (D) contractors' pollution liability, and (E) professional liability. Dkt. # 15, Amended Ex. G, Sec. I., Cov. A-E. The Primary Policy provides coverage under the "Bodily Injury and Property Damage Liability" and "Medical Payments" provisions only for incidents occurring *during the policy period*, which was from May 1, 2010 to May 1, 2011. Dkt. # 15, Amended Ex. G, Sec. I., Cov. A, 1(b)(2) ("This insurance applies to bodily injury and property damage only if: … The bodily injury or property damage occurs during the policy period"); Dkt. # 15, Amended Ex. G, Sec. I., Cov. C (1)(a)(1) ("We will pay medical expenses as described below for bodily injury caused by an accident…provided that: [t]he accident takes place…during the relevant policy period…"). The accident and subsequent settlement giving rise to the Wal-Mart Lawsuit involved bodily injury which occurred on December 13, 2007, nearly two and a half years before the Policy Period began. Dkt. # 7, ¶ 41(A); Ex. A, ¶¶ 9-14. Accordingly, there is no coverage under the Primary Policy for bodily injury and property damage liability or medical payments related to the underlying Wal-Mart Lawsuit.

Regarding coverage for "Contractor's Pollution Liability" and "Professional Liability", the Primary Policy excludes coverage for claims arising out of known conditions. Dkt. # 15, Amended Ex. G, Sec. I., Cov. A, 2(l); Cov. E, 2(p). This exclusion is applicable because the Defendant allegedly knew of the grease spill at the time of the incident and could have reasonably foreseen it would have given rise to the claim; indeed the Defendant was hired to clean up the grease spill, which allegedly caused Averyt's accident. Dkt. # 7, ¶ 41(H-L) and Ex. B. ¶ 16. Additionally, the "Personal and Advertising Injury Liability" and "Contractor's Pollution Liability" sections exclude coverage for claims arising out of rendering professional services, such as Wal-Mart's claim that the Defendant was negligent in removing the grease which caused the Averyt accident. Dkt. # 15, Amended Ex. G, Sec. I., Cov. A, 2(m) and Sec. II, Exclusions Applicable to Coverages A and B, (6); Dkt. # 7, ¶ 41(H-L) and Ex. B. ¶ 16-17.

Finally, there is no coverage under the Excess Policy because it incorporates the same terms as the Primary Policy. Dkt. # 15, Amended Ex. H, Sec. II.(2) ("Notwithstanding anything to the contrary, if any Underlying Insurance excludes or otherwise does not cover damages (for reasons other than the exhaustion of the Underlying Limits), then this policy will not provide coverage for such damages.")

Because the Policies do not provide coverage for any of the allegations contained in the Wal-Mart Lawsuit, the Plaintiff is not obligated to defend or indemnify the Defendant in that action. There is a factual basis here for declaratory default judgment, and it is this Court's Report and Recommendation that Plaintiff's motion for entry of default judgment [Dkt. # 16] should be granted against the defaulted Defendant.

CONCLUSION

It is the Court's Report and Recommendation that Plaintiff's Motion for Entry of Default

Judgment [Dkt. # 16] be granted.  The parties shall file any objections to this report and recommendation by August 25, 2014.

Date:  August 6, 2014                                     _____
                                                          U.S. Magistrate Judge Iain D. Johnston